UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:14-cv-22586-FAM

JUAN ALMANZAR, and
JOCELYN EVANS on behalf
of themselves and all others
similarly situated,

    Plaintiffs,

v.

SELECT PORTFOLIO SERVICING,
INC., CREDIT SUISSE (USA), INC.,
ASSURANT, INC., STANDARD GUARANTY
INSURANCE COMPANY, and AMERICAN
SECURITY INSURANCE COMPANY,

    Defendants.
_____/

_____

**MOTION OF ASSURANT, INC. TO DISMISS THE CLASS ACTION COMPLAINT
WITH PREJUDICE AND SUPPORTING MEMORANDUM OF LAW**
_____

                                  FRANK BURT (Fla. Bar No. 197963)
                                  Email:  fburt@cfjblaw.com
                                  FARROKH JHABVALA (Fla. Bar No. 765155)
                                  Email:  fjhabvala@cfjblaw.com
                                  LANDON K. CLAYMAN (Fla. Bar No. 283576)
                                  Email:  lclayman@cfjblaw.com
                                  IRMA REBOSO SOLARES (Fla. Bar No. 797073)
                                  Email:  isolares@cfjblaw.com
                                  CARLTON FIELDS JORDEN BURT, P.A.
                                  100 S.E. Second Street
                                  Miami Tower, Suite 4200
                                  Miami, Florida  33131-2113
                                  Telephone:  (305) 530-0050
                                  Facsimile:   (305) 530-0055

                                  *Attorneys for ASSURANT, INC.*

Pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., Defendant, Assurant, Inc. ("Assurant") submits this motion and memorandum of law to dismiss all claims asserted against it in the Class Action Complaint (the "Complaint") with prejudice.

## INTRODUCTION

The plaintiffs have sued Assurant with regard to insurance policies issued by American Security Insurance Company ("ASIC") and Standard Guaranty Insurance Company ("SGIC"), two indirect subsidiaries of Assurant. ASIC and SGIC issue insurance policies covering borrowers' properties at the request of their lender or servicer when borrowers fail to provide proof of acceptable insurance as required by their mortgages and the properties which serve as collateral for borrowers' loans and mortgages, are unprotected. Assurant, however, is not an insurance company, does not issue insurance policies, is not an insurer of the properties in this case, and does not contract with mortgage lenders and servicers to provide any services or pay any commissions on lender-placed insurance. Plaintiffs have simply sued the wrong party. For that and the other reasons discussed below, Assurant respectfully requests that the Court grant Assurant's Motion and dismiss all claims against Assurant, Inc. with prejudice.

## ARGUMENT

**I.  PLAINTIFFS HAVE SUED THE WRONG PARTY, AND STANDING AND SUBJECT MATTER JURISDICTION ARE LACKING**

"Article III of the United States Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' U.S. Const. Art. III, § 2, and 'the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264-65 (11th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Standing 'determin[es] the power of the court to entertain the suit.'" *Id.* at 1265 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

1

"The party invoking federal jurisdiction bears the burden of proving standing." *Id*. (citation omitted).

To meet the "irreducible minimum" requirements of constitutional standing, "a plaintiff must show (1) [he or she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000) (citing *Lujan,* 504 U.S. at 560–61)).

"Causation" requires the plaintiff to show "a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." *Hollywood Mobile Estates*, 641 F.3d at 1265 (quoting *Lujan*, 504 U.S. at 560). "It is the plaintiff's burden to plead and prove ... causation...." *Id*. at 1266 (citation omitted). "Redressability" inquires whether plaintiff has demonstrated a "substantial likelihood that the requested relief will remedy the alleged injury." *Scott v. Taylor*, 405 F.3d 1251, 1259 (11th Cir. 2005) (quoting *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 771 (2000)). As the Eleventh Circuit has noted, causation and redressability "are often interconnected": "if the injury is not caused by the challenged acts, an order directed to them will not redress it." *Kelly v. Harris*, 331 F.3d 817, 820 (11th Cir. 2003) (citation omitted).[1] The subject matter jurisdiction of this Court must be

---

[1] The plaintiffs must demonstrate an injury in fact that is specific to them, and it is to no avail that they may allege that others may have suffered injury. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976)).

established "as a threshold matter" before any consideration of the merits. *TSG Water Res., Inc. v. D'Alba & Donovan Certified Pub. Accountants, P.C.*, 260 F. App'x 191, 195 (11th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998)).

Here, the plaintiffs have sued Assurant even though Assurant "is not, and has never been, an insurance company, and has never sold, underwritten, issued, or marketed insurance policies in the State of Florida, or in any other state." Declaration of Jessica Olich ("Olich Dec.") ¶ 10 (attached here as Exhibit 1). Thus, Assurant, Inc. could not be, and is not, an insurer of Juan Almanzar or Jocelyn Evans, the Plaintiffs in this case. *Id.*

"Assurant, Inc. does not contract with mortgage lenders and servicers to provide any services relating to lender-placed insurance." *Id.* ¶ 8. Contrary to the allegations of the Complaint, "Assurant, Inc. does not contract, and has never contracted, with Select Portfolio Servicing, Inc. or Credit Suisse (USA), Inc. to provide lender-placed insurance or to provide any services relating to lender-placed insurance. It is ASIC and SGIC, rather than Assurant, Inc., which enter into such contracts and perform such services. Assurant, Inc. does not pay, and has never paid, commissions to Select Portfolio Servicing, Inc. or Credit Suisse (USA), Inc." *Id.*

"Assurant, Inc. is not now, nor has it ever been, a party to any agreement with Plaintiffs Juan Almanzar or Jocelyn Evans." *Id.* ¶ 12. "Assurant, Inc. does not participate in, direct, or control the placement, procurement, or binding of insurance policies that ASIC and SGIC issue." *Id.* ¶ 11. "Assurant, Inc. did not and does not set or participate in setting the policy terms for insurance policies issued by ASIC and SGIC, including any policies or additional insured endorsements issued to protect the property of the Plaintiffs in this case." *Id.*

"Assurant, Inc. is not, and has never been, involved in ASIC's and SGIC's daily decision-making or business operations. Assurant, Inc. maintains separate books and corporate records from ASIC and SGIC, and ASIC and SGIC generate their own business." *Id.* ¶ 9. "Assurant,

3

Inc. does not now do business, nor has it ever done business, with Plaintiffs Juan Almanzar or Jocelyn Evans." *Id*. ¶ 13.  In sum, Assurant is a holding company with a separate corporate existence from ASIC and SGIC.[2]

As a result, both causation and redressability are absent here.  The conduct alleged in the Complaint is not "fairly traceable" to Assurant; instead, the allegations concern "the independent actions" of ASIC and SGIC.  For the same reason, a decision favorable to the plaintiffs against Assurant would not redress the alleged injury.  In *Roberts v. Wells Fargo Bank, N.A.*, 2013 WL 1233268 (S.D. Ga. Mar. 27, 2013), a lender-placed insurance case involving virtually identical allegations as this case, the Court concluded based on declarations submitted by Assurant, Inc. identical to the Olich Declaration here, that Assurant, Inc. "is a mere holding company," and dismissed the plaintiff's claims against Assurant, Inc. *Id*. at *7.  Similarly in *Cochran-May v. Wells Fargo Bank, N.A.*, 2014 WL 361177, *3 (S.D. Tex. Feb. 3, 2014), another virtually identical case involving lender-placed insurance, the Court, after a thorough review of the factual allegations and the law, dismissed all claims against Assurant, Inc.  *See also Melinder v. Tex. Farmers Ins. Co.*, No. G-10-516, *slip op.* at 2-3 (S.D. Tex. Jan. 15, 2014) (dismissing Assurant, Inc. in a lender-placed case) (attached here as Exhibit 2).  This Court itself has recently considered a similar motion by Assurant in an LPI case, and has dismissed Assurant from the

---

[2] This Court may consider the Olich Declaration for its Rule 12(b)(1) analysis on two independent grounds without converting Assurant's motion into one for summary judgment. First, Assurant challenges plaintiff's Article III standing by its Rule 12(b)(1) motion, and the Court may look outside the Complaint to determine jurisdictional facts. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ("Factual attacks … challenge the existence of subject matter jurisdiction in fact, … and matters outside the pleadings, such as testimony and affidavits, are considered.") (quotation marks and citation omitted).  Second, the Complaint repeatedly alleges that Assurant "received" premiums relating to plaintiffs' lender-placed insurance policies, including alleged "kickbacks," commissions, reinsurance and other costs.  The claims against Assurant are based on such allegations.  Accordingly, the Court may consider the Olich Declaration because it addresses issues and allegations asserted in the Complaint and central to plaintiffs' claims against Assurant without converting this Motion into one for summary judgment. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

4

case. *See Montoya v. PNC Bank, N.A.*, No. 1:14-cv-20474-JG (Consent Case), slip op. [ECF No. 124], at 9-11 of 47 (S.D. Fla. Aug. 27, 2014).[3] The plaintiffs lack standing to sue Assurant, this Court lacks subject-matter jurisdiction over Assurant, and all claims against Assurant should be dismissed with prejudice.

II.  **THE CONCLUSORY ALLEGATIONS OF THE COMPLAINT DO NOT AFFORD ANY BASIS FOR EXERCISING SUBJECT MATTER JURISDICTION OVER ASSURANT**

The Complaint attempts to assert claims against Assurant by defining the term "Assurant Defendants" to include Assurant, Inc., which is a holding company with no connection to the insurance transactions alleged in the Complaint, and its indirect subsidiaries ASIC and SGIC, which the Complaint alleges to be involved in the transactions at issue. *See* Complaint ¶¶ 16, 17, 49, 59. The Complaint also attempts to hold Assurant, Inc. liable by selectively citing to Assurant, Inc.'s consolidated public filings that plainly report on the collective activities of the holding company and its numerous subsidiaries. Neither attempt saves the claims asserted against Assurant, Inc. from dismissal.

The practice of "group pleading" by lumping multiple defendants together is disfavored by the courts. As the Eleventh Circuit has explained: "In a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citing *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007)); *Brooks,*

---

[3] Although the *Montoya* Court found that Assurant "ha[d] set forth credible and unrefuted evidence that it is not a proper party to this case," it permitted plaintiffs there to take limited discovery "to explore their hunch that Assurant is a proper party to this case," and to move to add Assurant back as a party if they believed they had sufficient grounds to do so. *Id*. at 11. Limited discovery of Assurant's supposed involvement in LPI transactions has also been allowed in *Jackson v. U.S. Bank, N.A.*, No. 1:14-cv-21252-FAM, [ECF No. 48] (S.D. Fla. Aug. 25, 2014).

5

116 F.3d at 1381; *see also Gibbs v. U.S.*, 865 F. Supp. 2d 1127, 1151 (M.D. Fla. 2012) (same).

In *Stevens v. State Farm Lloyds*, 2002 WL 912053 (N.D. Tex. Apr. 30, 2002), in which the plaintiffs' allegations were directed to "Defendant," the court stated:

> Plaintiffs' constant reference to "Defendant" instead of "Defendants" leads the Court to conclude that Plaintiffs either had one of the named Defendants in mind as having committed these wrongs, or Plaintiffs instead lumped all of the State Farm Defendants . . . together into one mega-Defendant. Regardless of which alternative represents the reality of what happened during the drafting of the Complaint, the way in which the Complaint is written precludes the Court from discerning whether Plaintiffs intended to level their causes of action against one, some, or all of [the] Defendants.

Id. at *1.[4]

The same situation exists in this case. The Complaint "lumps" Assurant, Inc., ASIC, and SGIC together by calling them "Assurant Defendants." *See, e.g.,* Complaint ¶¶ 29-30, 34, 37, 39-40, 44-45, 68(m), 96, 103-105, 107-108, 110, 115, 118, 123-124, 127-128, 144-145, 162, 167. Because of plaintiffs' "lumping" of defendants and "group pleading," and the conclusory, non-specific and formulaic allegations of the Complaint, it is not possible to discern what the plaintiffs are attempting to allege specifically against Assurant, Inc. Thus, the allegations of the Complaint, even if they were true (and there is no need to presume their truth for purposes of this Motion), would not establish that plaintiffs have standing to bring the alleged claims against Assurant, Inc. in this action.

Likewise, the Complaint's allegations referencing one or two snippets out of more than 200 pages of Assurant, Inc.'s public filings provide no basis for asserting claims against Assurant, Inc. *See, e.g.* Complaint ¶ 14. Plaintiffs' references to the Assurant, Inc. Form 10-K are not matters the Court should consider in connection with the Motion. But even if the Form

---

[4] In *Stevens*, the district court dismissed the claims against one of the defendants that had "presented unrebutted evidence demonstrating that Plaintiffs [had] no possibility of prevailing ... on any of their claims," because that defendant "was a complete stranger to both the insurance contract and to the handling of Plaintiffs' insurance claim." 2012 WL 912053, at *1.

6

10-K references were appropriate to consider, they do not support plaintiffs' allegations and claims. On the contrary, the Form 10-K is entirely consistent with the Olich Declaration.

The Complaint mischaracterizes Assurant, Inc.'s 10-K by alleging that "Assurant participates in the force-placed insurance market through its trade name, Assurant Specialty Property, and its business strategy 'is to pursue long term growth in lender placed homeowner's insurance'", and that "'[t]he largest product line within Assurant Specialty Property is homeowners insurance consisting principally of fire and dwelling hazard insurance offered through [Assurant's] lender placed program.'" Complaint ¶ 14. The Form 10-K, however, does not state that it is the business strategy of Assurant, Inc., the overall parent holding company, "to pursue long term growth in lender placed homeowner's insurance"; instead, it states: "*Assurant Specialty Property's* business strategy is to pursue long-term growth in lender-placed homeowners insurance…." *See* Assurant, Inc. 2011 Form 10-K at 5 (emphasis added).[5] The Complaint improperly equates Assurant, Inc. with Assurant Specialty Property in an attempt to place liability on Assurant, Inc. for the conduct of its indirect subsidiaries.

The Form 10-K also does not state that homeowner's insurance is offered through "(Assurant Specialty Property's) lender placed program." Rather, the Form 10-K explains that Assurant's business is operated through "four operating segments," one of which is Assurant Specialty Property, which provides lender-placed homeowners insurance, among other services. *See* 2011 Form 10-K at 3, 5; *see also* Olich Dec. ¶¶ 6-7 ("Assurant, Inc. does not operate, and has never operated, the businesses that sometimes use the tradename 'Assurant Specialty Property.' 'Assurant Specialty Property' is a financial reporting segment" and "ASIC and SGIC are among the businesses that sometimes use the 'Assurant Specialty Property' tradename.").

Contrary to the erroneous construction plaintiffs seek to place on these snippets,

---

[5] *See* http://ir.assurant.com/investor/annuals (last visited August 4, 2014) (Assurant, Inc. 2011 Annual Report and Form 10-K).

7

Assurant, Inc.'s Form 10-K explains at the beginning that the Form 10-K reports on the activities of all entities in the entire group of companies that are subsidiaries of Assurant, Inc., and not on the activities of Assurant, Inc. itself:  "Unless the context otherwise requires, references to the terms "Assurant," the "Company," "we," "us" and "our" refer to our consolidated operations." Assurant, Inc. 2012 Form 10-K, Part I at 1.[6]  Thus, even if the Court were to consider the Assurant, Inc. Form 10-K, it is clear from the context that Assurant, Inc. is not an insurance company, it does not issue lender-placed insurance policies, and is not otherwise involved in the lender-placed business of its indirect subsidiaries, including ASIC and SGIC.  *See* Olich Dec. ¶¶ 8-13.

As many courts have explained, large corporate organizations, such as Assurant, Inc. and its many subsidiaries, routinely submit consolidated reports and speak in generic language when describing the activities of the operating subsidiaries.  However, that does not establish that the holding company is actually carrying out – or can be liable for – the business activities of the subsidiaries.  Numerous cases have rejected similar attempts to sidestep uncontroverted facts that defeat jurisdiction by arguing that some generic and informal statements extracted from a company's annual reports or public filings reveal the company's direct participation in, or detailed control over, the activities of related companies which exist as independent corporations.[7]  Read in context, as it must be, the Form 10-K makes it abundantly clear that

---

[6] *See* http://ir.assurant.com/investor/annuals (last visited August 4, 2014) (Assurant, Inc. 2012 Annual Report and Form 10-K).

[7] *See Francis v. Bridgestone Corp.*, 2011 WL 2650599, *9 (D.V.I. July 6, 2011) (rejecting the argument that statements in the corporate parent's annual report referring to itself and its subsidiaries as "we" and "our" supported an alter-ego theory of personal jurisdiction, and stating that "this sort of generic language is frequently used by corporations when describing the activities of their subsidiaries and does not demonstrate that Bridgestone actually controlled" its subsidiaries); *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1063, 1068 (C.D. Cal. 2002) (rejecting contention that use of pronouns such as "we," "us," or "our" in claims forms and correspondence evidenced alter ego relationship between insurance company and parent holding company which, like Assurant, Inc., did not issue insurance products or

Assurant, Inc., the holding company, is not an operating insurance company, and that the business activities of the "Assurant" family of companies are conducted through "four operating segments," one of which is Assurant Specialty Property. *See* Assurant, Inc.'s Form 10-K for the fiscal year ended December 31, 2012, at p. 3.[8] The Olich Declaration explains that "Assurant Specialty Property" is a trade name and financial reporting segment under which operating companies, such as ASIC and SGIC – but not Assurant, Inc. – sometimes conduct business. Olich Dec. at ¶¶ 6-7. This issue was examined in depth in *Roberts*, where the Court concluded that: "Assurant is not Assurant Specialty Property, and Assurant Specialty Property is not a company at all." 2013 WL 1233268, at *6. The Complaint's attempt to place liability on Assurant, Inc. by mischaracterizing statements in the Form 10-K that speak to the *collective* activities of a number of its direct and indirect subsidiary insurance companies fails as a matter

---

policies, and was not licensed to do so); *Akzona Inc. v. E.I. DuPont de Nemours & Co.*, 607 F. Supp. 227, 237 (D. Del. 1984) (finding that, in context, references in annual report to "division" made it clear division was comprised of separate corporations and particular companies had separate corporate existence); *Jazini v. Nissan Motor Co. Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (references in parent corporation's annual report did not show pervasive control over subsidiary); *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 867-68 (N.D. Ill. 1998) (ambiguous reference in parent corporation's annual report to "*our* marketing position," "*our* international marketing efforts," and "[*o]ur* key overseas operation" (emphasis in original) are consistent with subsidiary's existence as a separate entity); *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) ("references in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship"); *LaSalle Nat'l Bank v. Vitro, S.A.*, 85 F. Supp. 2d 857, 865 (N.D. Ill. 2000) (actual evidence is required, not corporation's general descriptions; promotional statements of a general nature on website do not "precisely convey the operative corporate structure"); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1460 (2d Cir. 1995) (district court properly rejected argument that "the descriptions of the relationship ... in … promotional literature justify piercing the corporate veil"); *Japan Petrol. (Nigeria) Ltd. v. Ashland Oil Co.*, 456 F. Supp. 831, 846 (D. Del. 1978) (subsidiary cannot be regarded as agent of parent based solely on representations made in annual reports, because "such representations may result from public relations motives or an attempt at simplification"); and *Am. Trading & Prod. Corp. v. Fischbach & Moore, Inc.*, 311 F. Supp. 412, 416 (N.D. Ill. 1970) (noting that "boastful" statements about corporate "family" do not prove corporate separateness was not respected).

[8] As of December 31, 2012, Assurant, Inc. had more than 100 subsidiary companies. *See* Assurant 10-K for the period ending December 31, 2012 (Assurant, Inc. 2012 Annual Report and Form 10-K), available at http://ir.assurant.com/investor/annuals (last visited August 4, 2014).

of law.

Indeed, exactly like the plaintiffs here, the plaintiff in *Roberts* "cite[d] liberally to Assurant's Forms 10-K and 10-Q filed with the SEC in arguing that Assurant itself is directly involved in the conduct [plaintiff] complains of." *Id*. The Court rejected that argument, and concluded that:

> A complete reading of Assurant's SEC filings demonstrates that Assurant 'is a holding company and, as such, has limited direct operations of its own. '[Its] assets consist primarily of the capital stock of [its] subsidiaries.' Assurant is organized into four operating segments, each of which is comprised of many different individual corporations[.] Assurant Specialty Property – itself a mere trade name – is one of those segments. And [its subsidiaries are] indirect insurance company subsidiar[ies] within that segment. Assurant is not Assurant Specialty Property, and Assurant Specialty Property is not a company at all.

*Id*. (internal citations omitted). The *Roberts* Court added that Assurant's wholly owned subsidiaries do sell the insurance products that plaintiffs challenge in this suit. *Id*. at *7. "But Assurant itself does not. It is a mere holding company, a corporation designed only to own other corporations and profit from that ownership." *Id*. (citing Black's Law Dictionary 319 (9th ed. 2011)). *Roberts* explained that "[i]solated references to 'we' and 'ours' in public disclosures simply do not rebut that [conclusion]. In fact, a full read through of those same disclosures demonstrates that Assurant used the personal pronouns for ease of description, not to convey that Assurant itself did anything but own the corporations comprising its operating segments." *Id*. (internal citations omitted).[9]

In *Cochran-May*, the plaintiff similarly alleged claims against Assurant, Inc. based on selected snippets from its public filings. The Court, after permitting the plaintiff jurisdictional discovery, dismissed all claims against Assurant, Inc., explaining:

> This Court is satisfied that the "public filings" evidence must be taken in context,

---

[9] Assurant, Inc.'s "active domestic operating insurance subsidiaries," in addition to being highly regulated by state agencies, are rated by A.M. Best. *See* Assurant, Inc. Form 10-K at p. 9 (noting that as of December 31, 2011, ASIC and SGIC enjoyed an A rating from A.M. Best).

10

particularly given that, after discovery, [plaintiff] cannot point to a single act by which Assurant participated in the conduct complained of or benefited from it in any manner other than that by which a shareholder benefits from its stock ownership.

*Cochran-May*, 2014 WL 361177, at *3.

Nor does it aid plaintiff that the Complaint alleges that ASIC and SGIC are "indirect subsidiar[ies] of Assurant." *See* Complaint ¶¶ 16-17.  "It is a well-settled tenet of corporate law that parent companies are not liable for acts of [their] wholly-owned subsidiaries by the mere fact of ownership of stock." *Kaufman v. AutoNation, Inc.*, 2000 WL 35722358, *12 (S.D. Fla. June 7, 2000) (citations omitted).  Likewise, nothing is added by the conclusory allegation that "[u]pon information and belief" ASIC and SGIC "pass much of their profits from force-placed insurance to their corporate parent, Assurant." Complaint ¶ 18.  In *Roberts*, the plaintiff likewise argued "that because Assurant derives income from its ownership of [a subsidiary] the corporate veil between the two entities should be pierced to allow Roberts's unjust enrichment claim to proceed."  2013 WL 1233268, at *5 (citation omitted).  The *Roberts* Court rejected that contention, explaining that:

> As the corporate parent, Assurant undoubtedly profits from its ownership of [a subsidiary] (assuming, of course, [the subsidiary] itself turned a profit)…. Assurant, like a stockholder paid a dividend by virtue of his or her ownership of the stock, profited from its ownership of [the subsidiary], not from payment of premiums by borrowers with force-placed insurance.  Borrowers like Roberts paid premiums to [the subsidiary], who allegedly then paid "kickbacks" to [the lender or servicer].  But no evidence Roberts presents supports the conclusion that Assurant received payments linked to the force-placed insurance Roberts objects to.  Absent more than profit derived from ownership, Roberts cannot justify piercing the veil between Assurant and [its subsidiary].

*Id*. at *8 (internal citation omitted).[10]  *See also Cochran-May*, 2014 WL 361177, at *3 ([plaintiff]

---

[10] Similarly, it is of no avail to plaintiffs to cite the March 21, 2013 settlement with the New York State Department of Financial Services ("NYDFS"). Complaint ¶ 9.  The settlement itself describes Assurant as a "holding company," and states that "[i]n New York, two subsidiaries of Assurant … write force-placed insurance." *In re American Security Insurance Co., et al.*, NYDFS, Consent Order, 1-2 (March 2013).  Furthermore, the terms of the Consent

11

cannot point to a single act by which Assurant … benefited … in any manner other than that by which a shareholder benefits from its stock ownership"). Based on *Roberts, Cochran-May* and the other authorities cited above, Assurant, Inc. respectfully requests that the Court dismiss all claims asserted against it in the Complaint.

### III. ALL CLAIMS AGAINST ASSURANT ARE BARRED FOR THE REASONS STATED IN ASIC'S AND SGIC'S MOTIONS TO DISMISS

For the reasons stated in American Security Insurance Company's and Standard Guaranty Insurance Company's motions to dismiss the Class Action Complaint with prejudice and supporting memoranda of law, which are incorporated herein, all claims against Assurant, Inc. should be dismissed.

### CONCLUSION

For the reasons stated herein, Assurant, Inc. respectfully requests that the Court grant its Motion and dismiss all claims asserted against it in the Complaint with prejudice.

---

Order apply only to the subsidiaries, and the so-called "[f]indings and allegations have not been subject to an adjudicatory hearing or judicial process in which [the subsidiary] … had an opportunity to present evidence and examine witnesses." *Id.* at 7, 23. It is also well-established that such consent orders and settlements cannot be used to establish liability. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (Consent judgment between government agency and private corporation which was "not the result of an actual adjudication of any of the issues[,]" cannot be used as "evidence in subsequent litigation between that corporation and another party"). References to such material in a complaint may be stricken pursuant to Federal Rule of Civil Procedure 12(f). *See In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593-96 (S.D.N.Y. 2011) (striking from complaint references to CFTC consent order and its factual findings); *Gotlin v. Lederman*, 367 F. Supp. 2d 349, 363 (E.D.N.Y. 2005) ("[C]ourts hold that references in pleadings to agreements with state or federal agencies may properly be stricken on a Rule 12(f) motion.").

Respectfully submitted

By: -/s/- *Frank Burt* _____
 FRANK BURT (Fla. Bar No. 197963)
 Email: fburt@cfjblaw.com
 FARROKH JHABVALA (Fla. Bar No. 765155)
 Email: fjhabvala@cfjblaw.com
 LANDON K. CLAYMAN (Fla. Bar No. 283576)
 Email: lclayman@cfjblaw.com
 IRMA REBOSO SOLARES (Fla. Bar No. 797073)
 Email: isolares@cfjblaw.com
 CARLTON FIELDS JORDEN BURT, P.A.
 Miami Tower, Suite 4200
 100 S.E. Second Street
 Miami, Florida 33131-2113
 Telephone: (305) 530-0050
 Facsimile: (305) 530-0055

 *Attorneys for ASSURANT, INC.*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion of Assurant, Inc. to Dismiss the Class Action Complaint with Prejudice and Supporting Memorandum of Law was filed on September 12, 2014 with the Clerk by using the CM/ECF system, which system served all counsel of record.

-/s/- *Frank Burt*
Frank Burt

**SERVICE LIST**

*Dwight Wilson, et al. v. Everbank, N.A., Everhome Mortgage, Assurant, Inc., Standard Guaranty Insurance Company, and American Security Insurance Company*,
Case No. 1:14-CV-22264-MGC

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>rn@kttlaw.com<br>Harley Shepard Tropin, Esq.<br>hst@kttlaw.com<br>**KOZYAK, TROPIN, et al.**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone: (305) 372-1800<br>Facsimile: (305) 372-3508<br><br>*Counsel for Plaintiffs* | Aaron S. Podhurst, Esq.<br>apodhurst@podhurst.com<br>Peter Prieto, Esq.<br>pprieto@podhurst.com<br>John Gravante, III, Esq.<br>jgravante@podhurst.com<br>Matthew Weinshall, Esq.<br>mweinshall@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>City National Bank Building<br>25 West Flagler Street, Suite 800<br>Miami, Florida 33130<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br><br>*Counsel for Plaintiffs* |
| Lance A. Harke, P.A.<br>lharke@harkeclasby.com<br>Sarah Engel, Esq.<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>**HARKE CLASBY, et al.**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone: (305) 536-8220<br>Facsimile: (305) 536-8229<br><br>*Counsel for Plaintiffs* | Erci D. Holland, Esq.<br>eholland@allfela.com<br>HOLLAND GROVES SCHNELLER, et al.<br>300 North Tucker Boulevard, Suite 801<br>St. Louis, MO 63101<br>Telephone¨ 314-241-8111<br><br>*Counsel for Plaintiffs* |

| | |
|---|---|
| John Scarola, Esq.<br>mep@searcylaw.com<br>SEARCY DENNEY SCAROLA, et al.<br>2139 Palm Beach Lakes Blvd.<br>P.O. Crawer 3626<br>West Palm Beach, FL  33402-3626<br>Telephone:  561-686-6300<br>Facsimile:  561-383-9451<br><br>*Counsel for Plaintiffs* | Paul F. Hancock, Esq.<br>paul.hancock@klgates.com<br>K&L Gates LLP<br>Southeast Financial Center<br>200 S. Biscayne Blvd., Suite 3900<br>Miami, FL  33131-2399<br>Telephone:  305-539-3300<br>Facsimile:  305-358-7095<br><br>*Counsel for Defendants Everbank, N.A. and Everhome Mortgage* |

36122482.1