# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 14-CIV-22586-MORENO

JUAN ALMANZAR, and
JOCELYN EVANS on behalf of
themselves and all others
similarly situated,

      Plaintiffs,

v.

SELECT PORTFOLIO SERVICING, INC.,
STANDARD GUARANTY INSURANCE
COMPANY, and AMERICAN SECURITY
INSURANCE COMPANY,

      Defendants.

_____

## MOTION OF STANDARD GUARANTY INSURANCE COMPANY TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT WITH PREJUDICE WITH SUPPORTING MEMORANDUM OF LAW
_____

FRANK BURT (Fla. Bar No. 197963)
Email:  fburt@cfjblaw.com
FARROKH JHABVALA (Fla. Bar No. 765155)
Email:  fjhabvala@cfjblaw.com
IRMA REBOSO SOLARES (Fla. Bar No. 797073)
Email:  isolares@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
100 S.E. Second Street
Miami Tower, Suite 4200
Miami, Florida  33131-2113
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Attorneys for STANDARD GUARANTY
INSURANCE COMPANY*

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., Defendant Standard Guaranty Insurance Company ("SGIC") submits this motion and memorandum of law to dismiss all claims asserted against it in the First Amended Class Action Complaint ("FAC") with prejudice.[1]

## INTRODUCTION

Plaintiff Evans sues SGIC alleging that SGIC participated in a nationwide "force-placed insurance scheme" whose purpose was to "manipulate" the lender-placed insurance market and "artificially inflate" premiums by agreeing with Select Portfolio Servicing, Inc. ("SPS") to pay "kickbacks disguised as 'commissions' … [and] other unmerited charges." FAC ¶ 36.[2] Lender-placed insurance ("LPI") is insurance which, pursuant to the terms of a mortgage, a lender or loan servicer purchases to provide continuous coverage on property serving as collateral for a loan when the borrower fails to maintain acceptable coverage, as required by the mortgage. The lender or loan servicer (in this case, SPS) purchases the coverage from the insurer (here, SGIC), and then attempts to recover the cost of the LPI from the borrower/property owner.

Evans's claims fail as a matter of law and should be dismissed for several reasons. First, the claims against SGIC are barred because Evans was provided all relevant disclosures and can assert no viable claim relating to her LPI placement. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013); *Feaz v. Wells Fargo Bank, N.A.,* 745 F.3d 1098 (11th Cir. 2014). Second, Evans's unjust enrichment claim fails because it is well settled that no cause of action in quasi-contract exists where the parties' relationship is governed by an express contract, and because the FAC fails to allege any "unjust" benefit conferred by Evans, directly or indirectly, on SGIC. Third, the tortious interference claim fails because Evans fails to identify any term of her mortgage that was breached by SPS, SGIC, or any other party and, far from identifying a breach of the mortgage, the FAC's allegations plainly show that the placement of the LPI was fully consistent with the terms of the mortgage. The tortious interference claim also fails because SGIC's alleged conduct, such as placing LPI when required, was undertaken pursuant to contracts between SGIC and SPS and to protect SGIC's financial and business interests. SGIC's

---

[1] SGIC issued lender-placed insurance only to Plaintiff Evans. FAC ¶¶ 77-78. Plaintiff Almanzar alleges that the policies placed on his property were issued by American Security Insurance Company. *Id.* ¶¶ 66, 68. Thus, to the extent Almanzar is asserting any claims against SGIC, those claims should be dismissed.

[2] The FAC is a more prolix version of the original Complaint [ECF 1], essentially restating and repeating the allegations of the original Complaint.

conduct, therefore, was privileged and justified, and the tortious interference claim fails for this additional reason.  Fourth, Evans does not state a viable RICO claim because she fails to allege – plausibly or otherwise – the requisite elements of a RICO "scheme," a pattern of racketeering activity, an enterprise, a resulting injury to herself by reason of those activities, or a conspiracy between SGIC and SPS.  And, lastly, Evans fails to join her co-mortgagor and co-insured, who is an indispensable party to this action, and her claims should be dismissed on this basis as well.

For these and the additional reasons set forth below, Evans's claims against SGIC fail as a matter of law and should be dismissed with prejudice.

## ARGUMENT

## I.   EVANS' CLAIMS AGAINST SGIC ARE BARRED BY THE UNDISPUTED DISCLOSURES CONCERNING THE LENDER-PLACED INSURANCE

In *Cohen*, the Court affirmed dismissal of all claims against the insurer in a virtually identical lender-placed case, explaining that:

> The complaint and the proffered amendments do not state any viable claim for relief.  The loan agreement and related disclosures and notices conclusively demonstrate that there was no deception at work.  It was [plaintiff's] responsibility to maintain hazard insurance on the property at all times; if she failed to do so, [her lender] had the right to secure the insurance itself and pass the cost on to her.  [Plaintiff's lender] fully disclosed that lender-placed insurance may be significantly more expensive than her own policy and may include a fee or other compensation to the bank and its insurance-agency affiliate.  In short, maintaining property insurance was [plaintiff's] contractual obligation and she failed to fulfill it; because the consequences of that failure were clearly disclosed to her, none of her claims for relief can succeed.

735 F.3d at 604, 608-16.  The *Cohen* Court found that the written disclosures provided to the plaintiff barred claims for alleged breach of the Illinois Consumer Fraud Act, breach of contract, fraud, conversion, intentional interference with contract, and unjust enrichment.  *Id*. at 608-16. Exactly like Evans here, the plaintiff in *Cohen* asserted claims based on alleged "kickbacks" related to LPI policies.[3]  The *Cohen* Court rejected these claims:

> But simply calling the commission a kickback doesn't make it one.... The defining characteristic of a kickback is divided loyalties.  But [the lender] was not acting on behalf of [the plaintiff] or representing her interests. The loan agreement makes it clear that the insurance requirement is for *the lender's* protection .... [The lender] was not subject to divided loyalties; rather, it was subject to an undivided

---

[3] Evans also complains generally of "backdating" of the LPI. *See* FAC ¶¶ 15, 40, 66. *Cohen* rejected similar "backdating" claims.  735 F.3d at 613.

loyalty to itself, and it made this clear from the start. The commission for the lender-placed insurance was not a kickback in any meaningful sense.

*Id*. at 611-12 (italics in original). *See also Feaz*, 745 F.3d 1098, 1111 (affirming dismissal of all extra-contractual claims in part because: "We agree with the Seventh Circuit that 'simply calling a commission a kickback doesn't make it one. The defining characteristic of a kickback is divided loyalties. But [the lender] was not acting on behalf of [the borrower] or representing her interests. The loan agreement makes it clear that the insurance requirement is for *the lender's* protection.") (italics in original).

In a virtually identical LPI case, this Court concluded that the "allegations virtually mirror those in *Cohen*, and similarly, those in *Feaz*"; like Evans here, "the plaintiff in *Cohen* alleged she would not have paid the LPI premium had she known about the 'kickbacks'"; and as in *Cohen*, the lender "was consistently clear that it did not act on Plaintiffs' behalf or represent their interests." *Circeo-Loudon v. Green Tree Servicing, LLC*, 2014 WL 4219587, *2 (S.D. Fla. Aug. 25, 2014). Under those circumstances, which are exactly the same circumstances here, this Court dismissed all claims against the insurer in *Circeo-Loudon*. *Id*. at *1-3.

The same analysis applies here. Evans's mortgage made clear that the insurance was for her lender's protection, that the insurance was to be maintained in the amounts and for the periods her lender required, and that the LPI policies would protect the lender but might or might not protect her. Mortgage [ECF 1-2] ¶¶ 5, 9. It was fully disclosed to Evans in writing that LPI may be significantly more expensive than insurance she could obtain.[4] Maintaining property insurance was Evans's contractual obligation, which she failed to fulfill; because the consequences of that failure and the LPI placement were clearly disclosed to Evans, none of her claims against SGIC relating to "kickbacks," "backdating" or "inflated premiums" can succeed. *Cohen*, 735 F.3d at 604; *accord Feaz*, 745 F.3d at 1110-11.[5]

---

[4] *See* Mortgage ¶ 5 (cost of LPI "might significantly exceed" cost of insurance Evans could have obtained); *see also* Declaration of Ronald K. Wilson ("Wilson Dec.") [ECF 23-1], Exs. A-C (advising that cost of LPI may be "much higher").

[5] Evans alleges that the commission payments are improper and constitute "kickbacks" because "no work is ever done by [SPS] or its affiliates to procure insurance for that particular borrower because the coverage comes through the master policy already in place." FAC ¶ 44. However, in the LPI context, an agent or affiliate of the lender initiates, negotiates, and procures the group master policy under which individual certificates are issued, as well as manages the relationship between the servicer and LPI underwriter. The SPS licensed agency affiliate earns commissions for procuring the group master policy and performing these other services. That

## II.    THE RICO CLAIMS AGAINST SGIC FAIL AS A MATTER OF LAW

Evans's RICO claim in Count X is defectively pled, and the RICO conspiracy claim in Count XI fails because the claim in Count X fails.[6]

### A.    Evans's RICO Claims Fail Because All Relevant Disclosures Were Provided To Her

The RICO claims fail because the detailed written disclosures provided to Evans in her mortgage and various written notices obviate any possible fraud claim.  Evans was advised in writing that:

- It was Evans's obligation under her mortgage agreement to maintain hazard insurance acceptable to her lender at all times, Mortgage [ECF 1-2], ¶ 5;

- If Evans failed to maintain the insurance, her lender had the right to obtain the insurance and pass the cost to her, *id.*;

- The cost of LPI "might significantly exceed" the cost of insurance Evans could have obtained, *id.*; *see also* Wilson Dec. [ECF 23-1], Exs. A-C (advising that cost of LPI may be "much higher");

- Evans should obtain her own insurance (Wilson Dec., Exs. A-C);

- The LPI coverage would be for SPS's benefit and may provide lesser coverage than insurance Evans could obtain (Mortgage ¶ 5; Wilson Dec., Exs. A-C); and,

- Upon providing proof of having purchased her own insurance, the LPI would be cancelled and Evans would receive a refund; Evans would be charged only for the

---

agency is paid commissions pursuant to an agency agreement following the payment by SPS of premium on individual certificates of insurance issued pursuant to a group master policy arrangement.  As the procuring agent, the SPS agency affiliate fully earns commission payments when the LPI premiums are paid to SGIC, and the commission payments are not "kickbacks." *See, e.g.*, 4 Couch on Ins. § 57:11 (a selling agent is entitled to compensation "if his or her agency is the procuring cause of the sale"); 44 C.F.R. § 62.6 (commission payments under National Flood Insurance Program paid to agent that "duly procures" the insurance).  Nor do Evans's allegations regarding quota-share reinsurance state a plausible claim.  Such quota-share reinsurance arrangements are entirely rate-neutral to borrower/policyholders; *i.e.*, borrower/policyholders pay nothing whatsoever in paying LPI approved rates because there are no costs included in those rates that are associated with quota-share reinsurance arrangements.

[6] *See Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) (dismissing RICO conspiracy claim because "[w]here a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails").  Here, the RICO conspiracy count simply re-alleges the allegations of the RICO count (*see* FAC ¶ 198) and has no additional factual allegations.  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004).  Thus, the RICO conspiracy claim (Count XI) fails along with the RICO claim in Count X.

number of days her own insurance had lapsed (Wilson Dec., Ex. C).

Virtually identical allegations of mail and wire fraud were made and dismissed in two other LPI cases. *See Weinberger v. Mellon Mortg. Co.*, 1998 WL 599192, at \*4-5 (E.D. Pa. Sept. 10, 1998); *Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 7051318, at 4-6 (C.D. Cal. Dec. 21, 2012). As here, the *Weinberger* and *Gustafson* plaintiffs alleged a scheme in which the mortgage lender received "kickbacks" from the LPI insurer, which were portions of "excessive" premiums charged to the plaintiff borrowers. As here, letters sent to the borrowers advised that the lender would obtain coverage through the insurer which might cost substantially more and provide less coverage than available elsewhere. Also as here, the letters urged the borrowers to obtain their own replacement coverage. And, as here, the plaintiffs in *Weinberger* and *Gustafson* asserted that the letters failed to disclose the defendants' "kickback" scheme. *See Gustafson*, 2012 WL 7051318, at \*5-6; *Weinberger*, 1998 WL 599192 at \*5. Both courts soundly rejected any notion of fraud. The *Weinberger* court expressed its disbelief at plaintiffs' contentions:

> The Court cannot see how letters that warn of an imminent bad deal and urge one to seek better, could possibly be calculated to deceive anyone. It is difficult to understand what plaintiffs claim the letter was intended to have defrauded them of or have deceived them into believing or doing. If defendants were indeed scheming to deceive plaintiffs into allowing their insurance to lapse so that [the lender] could charge [the insurer's] higher rates, then, as articulated by the Third Circuit, "none of defendants' alleged acts or omissions could be reasonably calculated to deceive a person of ordinary prudence and comprehension."

1998 WL 599192 at \*5 (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1416 (3d Cir. 1991)); *Gustafson*, 2012 WL 7051318, at \*7 (stating that "the Court fails to see how Defendants' failure to inform Plaintiffs and class members that force-placed insurance practices also generated profits for Defendants is a material omission 'reasonably calculated to deceive'").

In another virtually identical LPI case, in which the same disclosures were provided, the Seventh Circuit held that the disclosures left plaintiff no viable fraud or other claim. *See Cohen*, 735 F.3d at 608-15 (dismissing common law and Illinois statutory fraud claims). The *Cohen* Court found plaintiff's allegations of misrepresentations and omissions, which are similar to those alleged here, "senseless":

> The common premise underlying these allegations is that if [plaintiff] had known of the supposed kickbacks, she would not have paid the premiums for the lender-placed insurance. But [Lender] was authorized by the loan agreement to impose these charges and [plaintiff] was obligated to pay them. Her theory of damages seems to be that had she known the charges were really kickbacks, she would have breached her contractual duty to pay. That is senseless. Losing an

opportunity to breach a contract cannot constitute a cognizable fraud harm.

*Id*. at 614.[7]  Exactly as in *Cohen*, "[t]he loan agreement and related disclosures and notices conclusively demonstrate that there was no deception at work."  *Id*. at 604.

> It was [plaintiff's] responsibility to maintain hazard insurance on the property at all times; if she failed to do so, [Lender] had the right to secure the insurance itself and pass the cost on to her. [Lender] fully disclosed that lender-placed insurance may be significantly more expensive than her own policy and may include a fee or other compensation to the bank and its insurance-agency affiliate. In short, maintaining property insurance was [plaintiff's] contractual obligation and she failed to fulfill it; because the consequences of that failure were clearly disclosed to her, none of her claims for relief can succeed.

*Id*.  The extensive disclosures repeatedly provided to Evans eviscerate her RICO claims.

In *Circeo-Loudon*, the plaintiffs, like Evans here, did not dispute that all material disclosures were provided, but, like Evans here, contended that "the disclosures failed to advise them that alleged 'kickbacks' were 'bundled into their premiums'."  2014 WL 4219587, at *3. The Court dismissed that contention as "senseless."  *Id*.  "Drawn to a logical conclusion, Plaintiffs' theory of damages amounts to a claim that if they knew the charges were kickbacks, they would have breached a contractual duty to pay.  Losing an opportunity to breach a contract cannot constitute a cognizable fraud harm.  Ultimately, the disclosures provided to Plaintiffs bar their RICO claims."  *Id*.  Similarly, Evans's claims based on allegations of "kickbacks," "inflated" premiums, "backdating" and "excess" insurance cannot survive this motion to dismiss.

---

[7]  The proposed RICO claims also fail because the FAC alleges no facts that would support a duty to disclose on SGIC or SPS.  *See Cohen*, 735 F.3d at 614; *Wright v. State Farm Fire & Cas. Co.*, 555 F. App'x 575, 580 (6th Cir. 2014).  Evans bases her RICO predicate acts of mail fraud on the allegation that letters or notices sent to her "fostered the mistaken impression [in Evans] that the amounts for force-placed insurance premiums that Plaintiffs were charged represented the true cost of the force-placed coverage" when "[i]n fact, the amounts charged to Plaintiffs were less than what [SPS] actually pays for the insurance coverage because they included kickbacks, reinsurance profits, direct payments, 'expense reimbursements,' below-cost administrative services and other compensation returned to [SPS] but not passed on to Plaintiffs or the borrowers."  FAC ¶ 194.  However, SGIC was under no duty to disclose anything about its commission arrangements, the inclusion of servicing costs within the premium, or any information about its reinsurance agreements, and the FAC fails to allege any factual basis for placing such a duty on SGIC.  Moreover, even if proper disclosures were to have been omitted, and they were not, Evans fails to establish that the alleged omissions or misrepresentations caused the placement of her LPI.  *See, e.g., Brutz v. Stilwell*, 2010 WL 1924471, at *15 (N.D. Ohio May 12, 2010) ("Although plaintiffs allege that these emails were sent to lull the plaintiffs into a false sense of security, plaintiffs fail to explain how the emails accomplished the lulling….").

Indeed, the exact same allegations have been dismissed in other LPI cases.[8]

**B.      The allegations fail to plead a "scheme to defraud"**

Evans's RICO claim is based on alleged mail and wire fraud predicate acts, and she must plead a "scheme to defraud" through use of the mail or wires.  *Pelletier v. Zweifel*, 921 F.2d 1465, 1498-99 (11th Cir. 1991).  "[A]s the words 'deceit' and 'scheme' imply, the [plaintiff must plead] that the defendant's actions would have deceived a reasonably prudent person …."  *Id.* at 1499.  As demonstrated above, however, all relevant disclosures were provided to Evans, and this Court and others have held that allegations of fraud or deceit under these circumstances are "senseless."  *See Cohen,* 735 F.3d at 604, 614 ("The loan agreement and related disclosures and notices conclusively demonstrate that there was no deception at work."); *Circeo-Loudon*, 2014 WL 4219587, at *3.  And, in *Weinberger*, the Court held that similar disclosures could not be reasonably calculated to deceive a person of ordinary prudence and comprehension.  *Weinberger*, 1998 WL 599192 at *5; *see also Gustafson*, 2012 WL 7051318, at *7.   Under such circumstances, Evans's contention that SGIC engaged in a scheme to defraud her is simply not plausible, and the RICO claim fails.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, … to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**C.      Evans's Allegations Do Not Establish RICO Causation**

Evans's RICO claims also fail because they do not adequately allege any injury caused by the alleged predicate acts.  To establish that an injury to business or property was "by reason of" a RICO violation, a plaintiff must show that the predicate offenses were both the "but for" and proximate causes of the alleged injury.  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008); *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 712 (11th Cir. 2014) ("a plaintiff must indisputably show that a defendant's racketeering activity was more than a 'but for' cause

---

[8]  *See, e.g.*, *Cohen*, 735 F.3d at 607-16 (dismissing LPI claims based on alleged "kickbacks" and "backdating"); *Feaz*, 745 F.3d 1098,  1110-11 (dismissing LPI claims based on "kickbacks"); *Decambaliza*, 2013 WL 5777294, at *6-7 (dismissing LPI claims, including RICO, based on "backdating" and "kickbacks"); *Singleton*, 2013 WL 5423917, at *2-3; *Roberts*, 2013 WL 1233268, at *13 & n.9; *Kunzelmann*, 2013 WL 139913, at *12 ("any substantial relief from 'excessive or unearned' premiums for lender-placed insurance must likely be sought from state insurance regulators"); *Steven*, 2000 WL 33128256, at *3; *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 553-54 (S.D.N.Y. 2014) (dismissing "excessive insurance" and RICO claims in LPI case).

of harm."). RICO proximate causation requires a "direct relation" between the injury asserted and the conduct alleged. *Id.* at 654; *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 12 (2010) ("Our precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm."); *Marriott Bros. v. Gage*, 911 F.2d 1105, 1108 (5th Cir. 1990) ("The causal nexus between the alleged predicate acts and the defendant's injury must be direct: it is not sufficient that the injury alleged is simply the result of an unlawful act connected to the operation of the alleged RICO enterprise, or in furtherance of its goals."). Thus, a plaintiff who alleges (as Evans does here) an "injury 'by reason of' a pattern of mail fraud" cannot "prevail without showing that *someone* relied on the defendant's misrepresentations." *Bridge*, 553 U.S. at 658. The FAC does not meet these standards.

This case does not involve any reliance, by anyone, on the alleged misrepresentations, or any direct relationship between the alleged predicate acts and the alleged harm. Rather, Evans's alleged injury resulted from the ***involuntary*** placement of insurance that occurred when she failed to abide by her mortgage obligation to maintain acceptable insurance of her own choosing. In *Circeo-Loudon*, a virtually identical LPI case, this Court concluded;

> [P]laintiffs fail to explain how or why Defendants' purported mail and wire frauds proximately caused insurance to be placed when the same insurance would have been placed regardless of the alleged fraud. The direct "cause" of the alleged injury here is the LPI placement, not the supposedly inaccurate letters sent in the mail. Since plaintiffs do not "direct the Court to any allegations of reliance whatsoever," their RICO claims fail.

2014 WL 4219587, at *3 (citation omitted). Exactly the same analysis applies here. Because the FAC does not "direct the Court to any allegations of reliance whatsoever," and the placement was the result of Evans's failure to maintain insurance in compliance with her mortgage, not because of the written notices or any scheme, the RICO claim fails.[9]

---

[9] *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 915-16 (C.D. Cal. 2012) (dismissing claim after *Bridge*); *Varela v. Gonzales*, 2014 WL 1284985, at *3-4 (N.D. Tex. March 31, 2014) (dismissing RICO claim where plaintiff's alleged harm arose "from a set of actions … distinct from the alleged RICO actions"); *Hemi Group, LLC*, 559 U.S. at 11 (finding plaintiff's allegations of "conduct directly causing the harm was distinct from the conduct giving rise to the fraud"); *Edmonson v. AZ Petition Partners, LLC*, 2012 WL 3637769, at *12 (E.D. Ky. Aug. 22, 2012) (dismissing RICO claim because "harm asserted here is the result of separate, distinct actions, including actions taken by the Plaintiff himself. Thus, ... the conduct directly causing the asserted injury was distinct from the Defendants' conduct giving rise to the alleged fraud."); *see also Brutz*, 2010 WL 1924471, at *15 (dismissing RICO claim because plaintiffs failed to explain how communications allegedly meant to "lull" them "into a false sense of security" "accomplished the lulling").

Nor does it avail Evans to contend that she would not have paid "or would have contested" her LPI charges had it been disclosed to her that her LPI premiums included "illegal bribes and kickbacks …." FAC ¶¶ 190-96. Evans's contention makes no sense. First, as *Cohen* and *Circeo-Loudon* have explained, borrowers like Evans were obligated by their mortgages to pay LPI premiums, *see* ECF 1-2, ¶¶ 5, 9, and the contention that Evans would have breached that obligation had she known of the alleged "kickbacks" has been characterized as "senseless" because "[l]osing an opportunity to breach a contract cannot constitute a cognizable fraud harm." *Cohen*, 735 F.3d at 614; *Circeo-Loudon*, 2014 WL 4219587, at *3. Second, the FAC alleges that LPI placements occur automatically, **without** any consent by Evans. FAC ¶ 40. Third, the FAC does not allege that Evans actually read any of the disclosures provided to her, let alone that she actually relied on the disclosures to pay or object to her LPI placement. A similar argument in *Montoya v. PNC Bank, N.A.*, 2014 WL 4248208, *7 (S.D. Fla. Aug. 27, 2014), was found "to conflict with common sense." *Id*. Evans's RICO claims fail for lack of causation.

### D.    The FAC Does Not Allege That SGIC Participated In The Operation Or Management Of The RICO Enterprise

"The Supreme Court has held that in order to be held responsible under [RICO], a defendant must have not only participated [sic] in the scheme, but must have also participated in the operation or management of the enterprise itself." *Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co.*, 534 F. Supp. 2d 1326, 1338 (S.D. Fla. 2008) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)); *see also Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012) ("To 'participate, directly or indirectly, in the conduct of such enterprise's affairs', an individual must have some part in the operation or management of the enterprise itself.") (citing *Reves*, 507 U.S. at 179). "Simply because one provides "goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. There must be a sufficient nexus between the person and the conduct in the affairs of the enterprise. The operation or management test goes to that nexus." *Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993). Furthermore, RICO liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves*, 507 U.S. at 185 (quoting 18 U.S.C. § 1962(c)) (italics in original).

In *Montoya*, an LPI case involving virtually identical allegations as this case, the Court dismissed the RICO claims finding that plaintiffs "ha[d] not sufficiently pled how [the lender]

and [the insurer] directed or managed the affairs of the alleged enterprise." 2014 WL 4248208, at *20. The Court explained:

> Plaintiffs allege that [the insurer] paid "kickbacks" – "unearned" commission and reinsurance payments to [the lender], which they contend could constitute [the insurer] participating in the operation or management of the affairs of the enterprise. Even accepting Plaintiffs' argument at face value, Plaintiffs have only alleged that [the insurer and the lender] are participating in an enterprise. They have not sufficiently pled who is directing the affairs of the enterprise . . . [T]here are scant allegations regarding whether [the insurer], or even, for that matter, [the lender], had any part in *directing* and *controlling* the alleged enterprise, which plaintiffs allege "is an association in fact enterprise consisting of" all Defendants. This failure is fatal to Plaintiffs' substantive RICO claims at this stage.

*Id*. (internal citations omitted).

As in *Montoya*, Evans's attempt to assert a RICO claim against SGIC fails under the "operation and management" test because Evans has not pled factual allegations showing that SGIC directed or managed the affairs of the alleged enterprise. The FAC simply alleges that SGIC provided LPI to SPS, which is precisely SGIC's normal business as an insurer. FAC ¶¶ 12, 25, 66-69. Thus, the RICO claim against SGIC has been insufficiently pled and should be dismissed.[10]

Nor does it aid Evans that the FAC alleges that SGIC "sent form letters" to Evans "stating that [SPS] would purchase or renew force-placed coverage if voluntary insurance was not secured," and charge the borrower "the cost of the insurance;" that these statements "fostered the mistaken impression [in Evans] that the amounts for force-placed insurance premiums that Plaintiffs were charged represented the true cost of the force-placed coverage" when "[i]n fact, the amounts charged to Plaintiffs were less than what [SPS] actually pays for the insurance coverage because they included kickbacks, reinsurance profits, direct payments, 'expense

---

[10] *See Super Vision*, 534 F. Supp. 2d at 1338-39 (dismissing RICO claim because plaintiff did not allege that bank defendant "was not operating as a legitimate, independent financial institution" and participated in the operation or management of the enterprise); *see also Wuliger v. Liberty Bank, N.A.*, 2004 WL 3377416, at *9 (N.D. Ohio Mar. 4, 2004) (dismissing RICO claim because plaintiff's allegations established only that defendant "provided banking services in the context of a business relationship," and plaintiff did not allege "a basis to sustain the 'operation or management' test"); *Marshall v. City of Atlanta*, 195 B.R. 156, 173-74 (N.D. Ga. 1996) (dismissing RICO claim because plaintiff failed to allege that defendants had a "role in managing or directing the affairs of the alleged enterprise"); *Clark v. Porcelli*, 2009 WL 210859, *2 (M.D. Fla. Jan. 27, 2009) (dismissing RICO claim because plaintiff failed to sufficiently allege that the defendant had "some part in directing the affairs of the enterprise") (citation omitted).

reimbursements,' below-cost administrative services and other compensation returned to [SPS] but not passed on to Plaintiffs or the borrowers;" and that "Defendants had a duty to correct these statements and mistaken impressions." FAC ¶¶ 190-192, 194. As demonstrated above, not only do these allegations fail to meet the requirements for mail fraud and wire fraud because the disclosures were accurate and fail to support any claim of fraud, *see Cohen*, 735 F.3d at 604, they also fail to assert any wrongdoing by SGIC because they cannot establish RICO causation and because Evans fails to demonstrate any factual basis for placing a duty on SGIC to disclose its cost structure or "to correct" what Evans concedes was *her* "mistaken impression" which she never conveyed to SGIC.

**E.     The FAC Does Not Allege The Organization Of A RICO Enterprise That Is Able To Operate As A Racketeering Enterprise For Other Purposes**

A RICO plaintiff also must allege "that the organization was separate from the pattern of racketeering activity in which it engaged." *VanDenBroeck v. Commonpoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *West Texas Nat'l Bank v. FEC Holdings, LP*, 2013 WL 2158947, at *7 (W.D. Tex. May 17, 2013) ("The enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.'") (citing *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987). "A RICO enterprise cannot be a group simply conspiring to commit a fraud, that is not enough to trigger [a RICO violation]." *Millette v. DEK Techs., Inc.*, 2008 WL 5054741, at *4 (S.D. Fla. Nov. 25, 2008). Rather, "[t]he parties must be organized in a fashion that would enable them to function as a racketeering organization *for other purposes*." *Id.* (internal quotation marks and citations omitted); *accord Miller*, 994 F. Supp. 2d at 551 (dismissing RICO claims in similar LPI case against insurer because plaintiff failed to adequately allege a RICO enterprise, and holding that plaintiffs' "conclusory naming of a string of entities" who allegedly "assist[ed] the named defendants in effectuating their scheme to defraud" did not satisfy the enterprise requirement) (internal quotations and citation omitted). "These requirements are designed to keep simple conspiracies beyond the purview of RICO." *City of Cleveland v. Woodhill Supply, Inc.*, 403 F. Supp. 2d 631, 635 (N.D. Ohio 2005).

The FAC fails to allege, and, in fact, its allegations belie, that the purported RICO enterprise exists separate and apart from the alleged RICO activity. Evans alleges that the RICO enterprise was created for the purpose of maximizing revenues "by forcing Plaintiffs … to pay inflated amounts for force-placed insurance through a scheme that inflated such charges to cover

kickbacks and expenses associated with monitoring SPS's entire loan portfolio." FAC ¶ 184. The alleged relationship between SGIC and SPS is based on and limited by the agreements that are alleged in the FAC. *Id.* ¶¶ 37-38. Those agreements mandate that SGIC provide LPI, as well as the services necessary to accomplish the placement, such as the "cycle letters" alleged to be the predicate acts here. *Id.* ¶¶ 38-39, 190-91. Thus, Evans's own allegations demonstrate that the alleged RICO enterprise is not separate and apart from the racketeering activity in which it is allegedly engaged, and is not organized to function as a racketeering organization *for other purposes*.[11]  The RICO claim fails.

### III.   THE COURT SHOULD DISMISS THE UNJUST ENRICHMENT CLAIM BECAUSE WRITTEN CONTRACTS EXIST, AND EVANS HAS FAILED TO PLEAD ANY FRAUD, DURESS OR UNDUE ADVANTAGE

The allegations of the FAC demonstrate that Evans does not have a viable unjust enrichment claim. Under Texas law, "[u]njust enrichment is a quasi-contractual claim that is based on the absence of an express agreement." *Lexington Ins. Co. v. Chubb & Son, Inc.*, 2009 WL 1940485, at *3 (N.D. Tex. July 6, 2009). "When a valid, express contract covers the subject matter of the parties' dispute, a plaintiff cannot recover under a quasi-contract theory such as unjust enrichment." *Oden v. Vanguard Car Rental USA, Inc.*, 2008 WL 901325, at *4 (E.D. Tex. Mar. 31, 2008); *Lexington Ins.*, 2009 WL 1940485, at *3; *In re Vistaprint Corp. Mktg. & Sales Practices Litig.*, 2009 WL 2884727, at *10 (S.D. Tex. Aug. 31, 2009) ("There can be no unjust enrichment or other quasi-contractual claim where the parties' dispute is addressed by a written contract."). "[A] claim for unjust enrichment lies when one has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Lexington Ins.*, 2009 WL 1940485, at *3; *Anderson v. CitiMortgage*, 2011 WL 1113494, at *6 (E.D. Tex. Mar. 24, 2011) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

---

[11] *See, e.g., West Texas Nat'l Bank*, 2013 WL 2158947, at *7 (dismissing RICO claim because plaintiff failed to allege that the enterprise "has any organization or structure separate and apart from the pattern of racketeering"); *Capital Active Funding, Inc. v. B&L Constr. & Remodeling*, 2011 WL 6099372, at *4 (W.D. Tex. Dec. 7, 2011) (dismissing RICO claim because plaintiffs "failed to plead facts to establish that the association existed for purposes other than to commit the predicate acts and because the … Complaint fails to plead facts establishing that the association functioned as a continuing unit over time"); *see also City of Cleveland*, 403 F. Supp. 2d at 636-37 (dismissing RICO claim pursuant to Rule 12(c) because allegations of kickbacks and inflated prices for goods were insufficient to show RICO enterprise given that all alleged actions were taken pursuant to business relationship and not through separate racketeering organization that could act for other purposes).

"Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall; rather, [t]he profit must be 'unjust' under principles of equity." *Hern Family Ltd. P'ship v. Compass Bank*, 863 F. Supp. 2d 613, 628 (S.D. Tex. 2012) (citation and internal quotations omitted); *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. Ct. App. 1996).

### A. The Unjust Enrichment Claim Is Barred By The Undisputed Existence Of Express Contracts

The FAC pleads the existence of express contracts (the insurance policies covering Evans's property, and her mortgage that governs the duties and expectations regarding that insurance), and contends that SGIC was unjustly enriched by the retention of premiums collected under the express terms of the insurance policies. *See, e.g.,* FAC ¶¶ 73-75, 77-78, 124-136. Thus, the subject matter of the dispute involves the premiums charged for the policies issued on Evans's property, and the premiums arise from the insurance policies themselves. Because the FAC alleges written contracts that govern the parties' relationships and the subject matter of the dispute in this case – the mortgage and SGIC policies – Evans's unjust enrichment claim should be dismissed. *See, e.g., Baxter v. PNC Nat'l Bank Ass'n*, 541 F. App'x 395, 397-98 (5th Cir. 2013) ("There can be no recovery based on [an unjust enrichment] theor[y] when the same subject matter is covered by an express contract."); *Lexington Ins.*, 2009 WL 1940485, at *3 (dismissing unjust enrichment claim where parties' relationship was governed by insurance contract); *Anderson*, 2011 WL 1113494, at *6 (dismissing unjust enrichment claim where parties' relationship was governed by loan documents); *Bircher v. Bank of New York Mellon*, 2012 WL 3245991, at *6 (N.D. Tex. Aug. 9, 2012) (dismissing unjust enrichment claim where parties' relationship was governed by a deed of trust and note).

Moreover, because "the existence of an express contract is undisputed," Texas law does not permit Evans to plead her unjust enrichment claim in the alternative. *See U.S. ex. rel. Vavra v. Kellogg Brown & Root, Inc.*, 903 F. Supp. 2d 473, 491 (E.D. Tex. 2011). In *Kellogg*, the court rejected an attempt to plead in the alternative noting that the plaintiff referred to the contract throughout the complaint. *Id.* at n.10. Similarly, here, Evans alleges the existence of her mortgage and the SGIC policies that underlie her unjust enrichment claim throughout the FAC (*see, e.g.*, FAC ¶¶ 73-75, 77-78, 99-101, 110-11, 131), and there is no dispute that the mortgage

-13-

and SGIC policies are valid and enforceable.  Thus, Texas law does not afford Evans the option of pleading in the alternative.

   **B.    Evans Cannot Establish That SGIC Obtained Any "Unjust" Benefit Through Fraud, Duress, Or Undue Advantage**

   Evans's unjust enrichment claim independently fails because Evans does not allege any facts showing that it would be "unjust" or inequitable for SGIC to retain the insurance premiums for the coverage it provided for Evans's property.  Evans concedes that her mortgage requires that insurance be maintained on her property and that SPS is permitted to place insurance on the property if Evans fails to maintain the required insurance.  *See* FAC ¶ 101 ("Plaintiffs' mortgage contracts require[] that they maintain insurance on the property and provide[] that if they fail to do so, then the lender or servicer may obtain insurance coverage to protect its interest in the property, 'force place' the coverage, and charge the borrower.").  SGIC issued the LPI with no guarantee that the property had not already been damaged.  In exchange, SGIC charged and received a premium from SPS.  The insurance coverage and services provided by SGIC conferred tangible benefits on Evans and on SPS.  Evans does not dispute that the insurance was issued, would have covered damage to her property sustained during the coverage period, or that SGIC charged the premium stated on her insurance policy.  Nor does Evans dispute that she failed to obtain property insurance of her own choosing, as she was repeatedly urged in writing to do.  Under these facts, there was nothing fraudulent, improper, or otherwise "unjust" or "inequitable" about SGIC charging a premium for providing the insurance coverage expressly permitted by Evans's mortgage, when Evans allowed her own policy to lapse.[12]

   Evans does not allege any facts that would even remotely support a fraud, duress or undue advantage in the placement of the SGIC policies on her property in accordance with her mortgage.  As explained above (pp. 2-6), Evans was repeatedly advised that (i) it was her obligation under her mortgage agreement to maintain hazard insurance acceptable to her lender at all times; (ii) she should obtain her own insurance; (iii) if she failed to maintain the insurance, her lender had the right to obtain the insurance and pass the cost to her; (iv) the cost of LPI

_____

   [12] *See McCaig v. Wells Fargo Bank (Texas), N.A.*, 2012 WL 3598256, at *5 (S.D. Tex. Aug. 20, 2012) (dismissing unjust enrichment claim based on lender's collection of funds that were allegedly not owed because there was "no reference to fraud, duress, or undue advantage"); *Anderson*, 2011 WL 1113494, at *6 (dismissing unjust enrichment claim because plaintiff failed "to plead that the Defendants obtained a benefit from them by fraud, duress or the taking of an undue advantage").

"might significantly exceed" the cost of insurance Evans could have obtained on her own; (v) the LPI coverage would be for the lender's benefit and may provide lesser coverage than insurance Evans could obtain; and (vi) upon providing proof of having purchased her own insurance, the LPI would be cancelled and Evans would receive a refund and would be charged only for the number of days her own insurance had lapsed.  *See* Mortgage [ECF 1-2], ¶ 5; Wilson Dec. [ECF 23-1], Exs. A-C.  There is no basis for an unjust enrichment claim on these facts.  *See In re Vistaprint*, 2009 WL 2884727, at *10 (dismissing unjust enrichment claim where website disclosed the charges at issue); *Burlington N. R.R.*, 925 S.W.2d at 97-98 (unjust enrichment claim failed where party was charged the rate provided for in the contract); *Hern Family*, 863 F. Supp. 2d at 628 (unjust enrichment "does not operate to rescue a party from the consequences of a bad bargain") (citation omitted); *Gibson*, *v. Chase Home Finance, LLC*, 2011 WL 6319401, at *5 (M.D. Fla. Dec. 16, 2011) (insurance placement was authorized by the mortgage and "[a]n enrichment is unjust only if it would be inequitable for [defendant] to retain a benefit without paying for it.") (internal citation and quotations omitted).[13]

## IV.     THE TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED

Under Texas law, "[t]he elements of tortious interference with existing contracts are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that such interference proximately caused injury; and (4) that actual damage or loss occurred."  *See ThermoTek, Inc. v. WMI Enters., LLC*, 2011 WL 1485421, at *8 (N.D. Tex. April 19, 2011) (citations omitted).  In addition, "[t]he plaintiff must show that the defendant's conduct was either independently tortious or unlawful, that is, that the conduct violated some other recognized tort duty."  *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 599 F. Supp. 2d 809, 846 (S.D. Tex. 2008).  Evans's tortious interference claim is premised on the alleged "interference with [her] mortgage contract[] by being charged ... for force-placed

---

[13] Certain Texas courts have approved an unjust enrichment theory based on the "passive receipt of a benefit that would be unconscionable to retain."  *RDG Ltd P'ship v. Gexa Corp.*, 2005 WL 949171, at *4 (Tex. Ct. App. Apr. 26, 2005).  In *RDG*, Gexa inadvertently provided free electricity to an entire apartment complex owned by RDG as a result of an error by a former tenant of the apartment complex.  *Id*. at *1.  Under those facts, the court concluded that the "passive" benefit theory was viable against RDG.  *Id*. at *4.  The "passive benefit" theory has no application to the facts alleged in the FAC.  Evans does not allege that SGIC obtained any passive benefit by mistake, accident, or inadvertence; instead, her theory is that SGIC participates in a "highly profitable force-placed insurance scheme" with SPS.  *See, e.g.,* FAC ¶ 57.

insurance[.]"  FAC ¶ 174.

Evans's claim fails, however, because Evans does not allege that SGIC's alleged interference was "independently tortious or unlawful," nor does Evans identify any "recognized tort duty" that SGIC owed to Evans.  Evans's claim also fails because the FAC does not allege any facts showing that SGIC's alleged interference resulted in a breach of Evans's mortgage contract and, thus, Evans fails to allege that SGIC's alleged interference proximately caused any "actual damage or loss."  *See, e.g., Johnson v. Affiliated Computer Servs., Inc.*, 2011 WL 4011429, at *4-5 (N.D. Tex. Sep. 9, 2011) (dismissing tortious interference claim because plaintiff failed to sufficiently allege that defendants' conduct proximately caused a breach of contract); *Lone Star Milk Producers, Inc. v. Dairy Farmers of America, Inc.*, 2001 WL 1701532, at *3 (E.D. Tex. Jan 22, 2001) (same); *Hazelhurst v. JPMorgan Chase Bank, N.A.*, 2014 WL 3778160, at *4 (N.D. Tex. July 31, 2014) (dismissing tortious interference claim because plaintiffs "pled no facts regarding whether any actual damages were proximately caused by the alleged conduct").

The tortious interference claim also fails because SGIC's conduct was privileged.  "A party is privileged to interfere with another's contract when either of the following is true: (1) the interference is done in a *bona fide* exercise of the interfering party's rights; or (2) the interfering party has an interest in the subject matter equal or superior to the other party's interest."  *Lee v. Wells Fargo Bank, N.A.*, 2013 WL 754053, at *5 (S.D. Tex. Feb. 27, 2013) (citation omitted).  In this case, Evans alleges that SGIC had contracts with SPS, pursuant to which SGIC issued insurance policies to protect SPS's interest in the loans and mortgaged properties.  *See* FAC ¶¶ 12, 173.  Thus, the FAC's allegations establish that SGIC's conduct was privileged because it was undertaken in a *bona fide* exercise of SGIC's rights under its contract with SPS to protect its business and financial interests in its contracts with SPS.  Accordingly, Evans's tortious interference claim should be dismissed.

## V.   EVANS'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO JOIN A REQUIRED PARTY

The FAC violates the federal joinder rule, Fed. R. Civ. P. 19, by failing to name Roger H. Alexander, a co-borrower, co-mortgagor, co-owner, and co-insured on the property at issue.  *See* Mortgage [ECF 1-2]; *see also* Wilson Decl. [ECF 23-1] ¶¶ 3, 6-9 & Exs. A-C.  Mr. Alexander would have the right to recover damages from the Defendants if wrongful conduct is established.  "If the party is a required party, the court must order that the person be made a

party." *See Int'l Importers, Inc. v. Int'l Spirits & Wines, LLC*, 2011 WL 7807548, at *2 (S.D. Fla. July 26, 2011) (citation and internal quotation marks omitted).  If the new party cannot be joined, the court must decide if "the action should proceed among the existing parties or should be dismissed." *Id.* (quoting Fed. R. Civ. P. 19(b)).

Mr. Alexander is a required party because he is needed to "accord complete relief among existing parties" and to avoid the possibility of "double, multiple, or otherwise inconsistent obligations."  Fed. R. Civ. P. 19(a)(1); *see also Marple v. Countrywide Fin. Corp.*, 2008 WL 9418768, at *7 (D.N.J. May 7, 2008) (mortgagor's co-borrower daughter required to be joined to putative class action alleging illegal fee-splitting in provision of settlement services); *Moll v. U.S. Life Title Ins. Co. of N.Y.*, 654 F. Supp. 1012, 1018-19 (S.D.N.Y. 1987) (mortgagor's co-borrower spouse required to be joined to putative class action alleging kickbacks paid in connection with title insurance).  Evans has not pled, as she must, the reasons for not joining Mr. Alexander to this lawsuit, *see* Fed. R. Civ. P. 19(c) ("Pleading the Reasons for Nonjoinder").  The Court cannot "in equity and good conscience" proceed among the existing parties.  *See* Fed. R. Civ. P. 12(b)(7), 19(b).  Accordingly, all of Evans's claims against SGIC should be dismissed.

## CONCLUSION

For the reasons stated herein, SGIC respectfully requests that the Court grant this Motion and dismiss all claims asserted against SGIC with prejudice.

Respectfully submitted

By:   -/s/- *Frank Burt* _____

FRANK BURT (Fla. Bar No. 197963)
Email:  fburt@cfjblaw.com
FARROKH JHABVALA (Fla. Bar No. 765155)
Email:  fjhabvala@cfjblaw.com
IRMA REBOSO SOLARES (Fla. Bar No. 797073)
Email:  isolares@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida  33131-2113
Telephone:  (305) 530-0050
Facsimile:   (305) 530-0055

*Attorneys for STANDARD GUARANTY INSURANCE COMPANY*

-17-

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion of Standard Guaranty Insurance Company to Dismiss the First Amended Class Action Complaint with Prejudice with Supporting Memorandum of Law was filed on November 3, 2014 with the Clerk by using the CM/ECF system, which system served all counsel of record.

-/s/- *Frank Burt*
Frank Burt

## SERVICE LIST

*Almanzar, et al. v. Select Portfolio Servicing, Inc., Credit Suisse (USA), Inc., Assurant, Inc.,*
*Standard Guaranty Insurance Company, and American Security Insurance Company*,
Case No. 14-CIV-22586-MORENO

Aaron Samuel Podhurst, Esq.
apodhurst@podhurst.com
John Gravante, III, Esq.
jgravante@podhurst.com
Matthew Weinshall, Esq.
mweinshall@podhurst.com
Peter Prieto, Esq.
pprieto@podhurst.com
**Podhurst Orseck, P.A.**
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Phone: 305-358-2800
Fax: 305-358-2382

*Counsel for Plaintiffs*

Howard Mitchell Bushman, Esq.
hbushman@harkeclasby.com
Lance August Harke, Esq.
lharke@harkeclasby.com
Sarah Clasby Engel, Esq.
sengel@harkeclasby.com
**Harke Clasby & Bushman LLP**
9699 NE Second Avenue
Miami Shores, FL 33138
Phone: 305-536-8220
Fax: 305-536-8229

*Counsel for Plaintiffs*

Jonathan R. Rosenn, Esq.
jrosenn@ll-lawfirm.com
**Lapin & Leichtling LLP**
255 Alhambra Circle, Suite 1250
Coral Gables, FL  33134
Phone:  (305) 569-4100
Fax:  (305) 569-0000

*Counsel for Defendants, Select*
*Portfolio Servicing, Inc. and*
*Credit Suisse (USA), Inc.*

#36954838

Robert J. Neary, Esq.
rn@kttlaw.com
Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Adam M. Moskowitz, Esq.
amm@kttlaw.com
Rachel Sullivan, Esq.
rs@kttlaw.com
**Kozyak Tropin & Throckmorton, P.A.**
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, FL 33134
Phone: 305-372-1800
Fax: 305-372-3508

*Counsel for Plaintiffs*

Darnley D. Stewart, Esq.
dstewart@gslawny.com
**Giskan Solotaroff Anderson & Stewart LLP**
11 Broadway, Suite 2150
New York, NY  10004
Phone:  212-847-8315

*Counsel for Plaintiffs*

Mary Kestenbaum Fortson
mkestenbaum@merlinlawgroup.com
Sean Michael Shaw
sshaw@merlinlawgroup.com
William F. Merlin, Jr.
cmerlin@merlinlawgroup.com
**Merlin Law Group**
777 S. Harbour Island Blvd. Suite 950
Tampa, FL  33602
Phone:  (813) 229-1000
Fax:  (813) 229-3692

*Counsel for Plaintiffs*