UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
No. 14-CIV-22586-MORENO

JUAN ALMANZAR and JOCELYN EVANS,

    *Plaintiffs*,

vs.

SELECT PORTFOLIO SERVICING, INC. et al.,

    *Defendants*.

_____/

**OMNIBUS ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

This cause came before the Court upon Defendants Standard Guaranty Insurance Company, American Security Insurance Company, and Select Portfolio Servicing, Inc.'s motions to dismiss a number of claims related to allegations that the Defendants paid and received unearned kickbacks in connection with a force-placed insurance scheme.[1] The Defendants make similar arguments in their motions to dismiss the Plaintiffs' amended complaint, so the Court considers the motions together. The Plaintiffs present the facts of the case as follows:

> Defendants American Security Insurance Company (ASIC) and Standard Guarantee Insurance Company (SGIC) worked with major mortgage lenders to devise a fraudulent scheme whereby ASIC and SGIC offered loan-tracking and insurance-placement services to the lenders and pay them unearned kickbacks (essentially bribes) in exchange for an exclusive contractual relationship. The kickbacks to the lenders and mortgage servicers take many forms, and are often characterized as legitimate payments to conceal their actual purpose from consumers. For example, the kickbacks are often characterized as "commissions"

---

[1] This Order builds on the Court's experience adjudicating a number of similar force-placed insurance cases, including *Jackson v. U.S. Bank*, No. 14-cv-21252 (S.D. Fla. 2014), which was stayed after the Court denied the defendants' motion to dismiss, and *Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-cv-21384 (S.D. Fla. 2014), where there is a pending motion to dismiss the plaintiffs' amended complaint.

-1-

-2-

paid to an affiliate of the lender for brokerage services, but are in fact cycled through the affiliate, which does no work in connection with the borrower's force-placed insurance, and paid back to the lender as pure profit. Kickbacks may also take the form of captive reinsurance arrangements, direct payments, "expense reimbursements," debt forgiveness, or discounted administrative services. Over time, the schemes have reaped the major mortgage lenders and the Defendants hundreds of millions of dollars in illegal and unearned profits.

Defendant Select Portfolio Servicing (SPS) is a loan servicing company that purchases master insurance policies that cover all of its mortgage loans. In exchange, ASIC and SGIC are given the exclusive right to force insurance on property securing a loan within the portfolio when the borrower's insurance lapses or the lender determines that the borrower's existing insurance is inadequate. ASIC and SGIC monitor SPS's entire loan portfolio for lapses in borrowers' insurance coverage. Once a lapse is identified, ASIC and SGIC send notice to the borrower that insurance will be "purchased" and force-placed if the voluntary coverage is not continued. If a lapse continues, the insurer notifies the borrower that insurance is being force-placed at his or her expense.

SPS charges borrowers more than the actual cost (and thus more than what it actually pays) for force-placed coverage, and thus charges borrowers more than the amount necessary to cover its own interest in the collateral for borrowers' mortgage loans. The charges passed on to borrowers are artificially inflated by the Defendants to include the cost of bribes and unearned kickbacks paid by ASIC and SGIC to SPS to maintain an exclusive relationship. SPS also passes on charges to the homeowners for unnecessary and duplicative coverage not required by law or the terms of the mortgage to the direct benefit of the Defendants.

For the purposes of the instant motions, the Court accepts these allegations as true, and construes the allegations in the light most favorable to the Plaintiffs to determine the whether Plaintiffs pled enough facts to state plausible claims for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Being fully advised in the premises of the Defendants' motions, it is

ADJUDGED that the Defendants' motions to dismiss are DENIED. Accepting Plaintiffs' allegations as true, the Court finds sufficient factual matter within the complaint to form the bases of claims related to a fraudulent force-placed insurance scheme. The Court now addresses the Defendants' arguments in turn.

## I. PRELIMINARY BARRIERS TO SUIT

The Defendants believe that the Plaintiffs face several preliminary barriers to suit. First, the Defendants argue that Plaintiff Juan Almanzar does not have standing to assert claims related to the Defendants' force-placed insurance scheme because Mr. Almanzar took part in Chapter 13 bankruptcy proceedings between October, 2009, and July, 2013. According to the Defendants, these proceedings divest Mr. Almanzar of standing to assert any claims that accrued during that time. The Plaintiffs respond that Mr. Almanzar was unaware of his claims against the Defendants until after his bankruptcy case closed. Construing the Plaintiffs' allegations as true, the Court cannot say that Mr. Almanzar forfeited standing to bring his force-placed claims by virtue of his temporary Chapter 13 bankruptcy status.

Next, the Defendants argue that the filed-rate doctrine bars the Plaintiffs' claims because the Plaintiffs are challenging insurance rates that were approved by the New Jersey Department of Banking and Insurance. While the filed-rate doctrine would bar claims challenging the actual rates of the force-placed insurance, the Plaintiffs are not challenging the rates themselves. Rather, the Plaintiffs are challenging the fraudulent scheme behind the rates, by which SGIC and ASIC offered loan-tracking and insurance-placement services to SPS and paid SPS unearned kickbacks in exchange for an exclusive contractual relationship. In keeping with precedent from this Court and many other courts that have considered this issue, the Court declines to apply the filed-rate doctrine to preclude claims related to force-placed insurance schemes. *E.g.*, *Jackson v. U.S. Bank, N.A.*, No. 14-cv-21252, 2014 WL 4179867, at *3–4 (S.D. Fla. Aug. 22, 2014) (listing cases).

Finally, the Defendants argue that the Plaintiffs' claims fail as a matter of law because the Defendants disclosed that borrowers might be subject to "much higher" costs if they did not obtain hazard insurance on their own. The Defendants' disclosure argument rests on the assumption that the fees paid to SPS were commissions, rather than illegal kickbacks, which is an issue that goes to the core of this case. The Court recognizes that merely labeling payments as illegal "kickbacks" is insufficient to animate the Plaintiffs' claims for relief. *See Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1111 (11th Cir. 2014); *Cohen v. American Security Insurance Co.*, 735 F.3d 601, 611 (7th Cir. 2013). Instead, the Court looks to the facts as pled to determine whether the quid pro quo arrangement between the Defendants moves into the realm of illegal payments for services, i.e., bribes, the impropriety of which cannot be ameliorated by disclosures to the borrowers.

In their complaint, the Plaintiffs detail a secret scheme by which SGIC and ASIC paid wholly unearned kickbacks to SPS in exchange for an exclusive contractual relationship to force place insurance upon the Plaintiffs. The costs associated with the Defendants' fraudulent scheme were passed onto the borrowers, giving rise to the claims in this case. If, as alleged, the force-placed insurance scheme was driven by illegal kickbacks, then disclosing the end cost of force-placing the insurance cannot insulate the Defendants from claims pertaining to the Defendants' behind the scene activities that drove up the rates borne by unsuspecting borrowers.

## II.   RACKETEER INFLUENCED AND CORRUPT ORGANIZATION CLAIMS

Defendants' Racketeer Influenced and Corrupt Organization Act (RICO) arguments again turn on the triable issue of whether the costs built into Defendants' force-placed insurance scheme constituted commissions or illegal kickbacks. If the force-placed insurance scheme was

driven by illegal activities, then the Plaintiffs have satisfied the elements of a claim for RICO violations under 18 U.S.C. § 1962(c).

The Plaintiffs allege that the Defendants mailed letters to borrowers that misrepresented the nature of the amounts that they would be billed, stated that the amounts represented the cost of insurance, and failed to disclose that a portion of the costs represented unearned kickbacks that were paid to SPS in exchange for an exclusive contractual relationship with SGIC and ASIC. Plaintiffs further allege that these notices caused borrowers to forego obtaining hazard insurance because the Plaintiffs would have obtained insurance on their own if they were informed that the Defendants' force-placed insurance included the costs of unearned kickbacks.

According to the Plaintiffs, these activities took place within an enterprise comprised of SGIC, ASIC, and SPS. The members of the enterprise shared the common goal of increasing revenues by forcing the Plaintiffs to pay inflated rates based on the illegal kickbacks that fueled the enterprise, and, as detailed above, each member played an indispensable role in the operation of the enterprise. If proven, these allegations form the basis of RICO violations stemming from the Defendants' scheme to defraud borrowers by mail fraud. *See Jackson*, 2014 WL 4179867 at \*5.

### III.   TRUTH IN LENDING ACT CLAIMS AGAINST DEFENDANT SPS

The Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, protects consumers by helping them make informed credit decisions. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980) ("The Truth in Lending Act has the broad purpose of promoting the informed use of credit by assuring meaningful disclosure of credit terms to consumers."). The Plaintiffs allege that the Defendants violated the Truth in Lending Act by changing the terms of the Plaintiffs' loans and creating new obligations when the Defendants forced duplicative and retroactive

insurance coverage on the Plaintiffs' properties. The Plaintiffs further allege that this duplicative coverage exceeds that required by law and the Parties' mortgage agreements, and that the attendant hidden costs form the basis of Truth in Lending Act violations because SPS did not adequately disclose these costs to borrowers before imposing the changes. SPS responds that it did not need to disclose the costs because they constituted "premiums for insurance against loss of or damage to property," and SPS informed borrowers that they can obtain this coverage from other sources in accordance with 12 C.F.R. § 226.

The Court construes the provisions of the Truth in Lending Act liberally to afford relief for borrowers. *See Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004). In construing the Plaintiffs' Truth in Lending Act allegations, the Court again turns to the distinction between legal commissions and unearned kickbacks, the latter of which cannot constitute a valid "premium for insurance" under the statute. *See Jackson*, 2014 WL 4179867 at *6. Further, the deceptive nature of the unearned kickback scheme precludes the application of the Truth in Lending Act's one-year statute of limitations against Plaintiffs' claims. *Id.* Thus, the Plaintiffs have stated a claim for violations of the Truth in Lending Act.

**IV.   NEW JERSEY CONSUMER FRAUD ACT CLAIMS AGAINST DEFENDANTS SGIC AND ASIC**

The New Jersey Consumer Fraud Act provides relief "to consumers who are victimized by fraudulent practices in the marketplace." *See Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1114 (N.J. 2011). To state a claim for a Consumer Fraud Act violation, the Plaintiffs must allege "any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful . . . ." N.J. Stat. § 56:8-19. The definition of "ascertainable loss" includes costs associated by improper force-

placed insurance. *Gonzalez*, 25 A.3d at 1116. "Unlawful practices" under the Consumer Fraud Act include:

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission . . . whether or not any person has in fact been misled, deceived or damaged thereby.

N.J. Stat. § 56:8-2. SGIC and ASIC move to dismiss the Plaintiffs' Consumer Fraud Act claims because nothing was "marketed" to the Plaintiffs that could form the basis of their claims, and because the Plaintiffs did not allege that they were "induced or lured" into using force-placed insurance.

In view of the cases reaching conflicting outcomes on this issue, the Court returns to the language of New Jersey's Consumer Fraud Act to determine whether the Plaintiffs stated a claim under the statute. The Plaintiffs allege that the Defendants used a fraudulent scheme to secure unearned kickbacks from force-placed insurance, which constitutes an unlawful practice under N.J. Stat. § 56:8-2. The Plaintiffs also allege an ascertainable loss of money in the costs associated with funding the Defendants' unearned kickbacks. *See* N.J. Stat. § 56:8-19. If not for the costs concealed in the Defendants' fraudulent scheme, then the total cost of force-placed insurance would have been lower for the Plaintiffs. Based on the language of the statute, these allegations form the basis of Consumer Fraud Act claims under New Jersey law.

## V.   MISCELLANEOUS COMMON LAW CLAIMS

The Plaintiffs bring a number of common law claims related to the hazard insurance provisions in their mortgage agreements. The Plaintiffs first allege a simple breach of the mortgage agreements based on the unreasonable placement of hazard insurance (which, according to the Plaintiffs, involved up-charging borrowers for unearned kickbacks). Though the express language of the contracts allowed SPS to force-place insurance upon the Plaintiffs, SPS

was impliedly obligated to do so in a "reasonable and appropriate manner." *See Laffan v. Santander Bank, N.A.*, No. CIV.A. 13-4040, 2014 WL 2693158, at *4 (E.D. Pa. June 12, 2014). The Court cannot dismiss the Plaintiffs' breach of contract claims because whether SPS force-placed insurance in a reasonable and appropriate manner is a contested issue in this case.

The Plaintiffs build tortious interference claims upon their breach of contract claims. As the Plaintiffs stated plausible claims for relief on their breach of contract allegations, their detailed allegations about how SGIC and ASIC intentionally and unjustifiably caused SPS to breach its mortgage agreements with the Plaintiffs (by increasing the cost of hazard insurance to cover unearned kickbacks) are sufficient to state claims for tortious interference with SPS's mortgage contracts with the Plaintiffs.

The Plaintiffs' face a higher bar to state claims for breach of fiduciary duty, as it is the truly exceptional case where a lender acts as a fiduciary to a borrower. *United Jersey Bank v. Kensey*, 704 A.2d 38, 45 (N.J. App. Div. 1997). The existence of a fiduciary relationship, however, is a fact-specific inquiry, and there are instances in which gross acts of misconduct and deceit can give rise to claims for breach of a lender's fiduciary duty. *Id.* Accepting the Plaintiffs' allegations as true, the Court cannot dismiss the Plaintiffs' claims at this time. The Plaintiffs pled the existence of a fiduciary relationship based on SPS's discretionary authority to develop force-placed insurance, and based on SPS's position as an escrow agent between SGIC/ASIC and the Plaintiffs. The Plaintiffs further allege that SPS secretly exploited its relationship with SGIC/ASIC in order to extract unearned kickbacks at the expense of the Plaintiffs. If proven, these allegations may form the basis of claims for breach of fiduciary duty against SPS.

-9-

Like their breach of fiduciary duty claims, the Plaintiffs predicate their breach of implied covenant claims on the Defendants' bad faith exercise of discretion when it imposed hazard insurance upon the Plaintiffs. The Court sees no reason to depart from the precedent in this District that allows breach of implied covenant claims to proceed on nearly identical allegations. *See Carden v. ING Bank, FSB*, No. 9:13-cv-80659-KLR (S.D. Fla. March 20, 2014).

Finally, the Plaintiffs pled claims for unjust enrichment in the alternative to their breach of contract claims. The Plaintiffs allege that SGIC and ASIC were enriched by their exclusive dealing arrangement with SPS. The Plaintiffs further allege that SGIC and ASIC's enrichment took place at the expense of the Plaintiffs by virtue of the costs associated with SPS's unearned kickbacks that were passed on to the Plaintiffs. According to the Plaintiffs, SGIC and ASIC's enrichment was unjust because it was generated by the Defendants' fraudulent force-placed insurance scheme. The Court finds that these allegations are sufficient to state common law claims for unjust enrichment.

For these reasons, the Defendants' motions to dismiss the claims presented in the Plaintiffs' consolidated complaint are denied.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of March, 2015.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record